Filed 6/3/22  P. v. Woods CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>SEONJUAN WOODS,<br><br>　　Defendant and Appellant. | H049410<br>(Santa Clara County<br>Super. Ct. No. C2108426) |

Defendant Seonjuan Woods appeals from a judgment of conviction entered after he pleaded no contest to violating a protective order pursuant to Penal Code section 166, subdivision (c)(4),[1] and admitted to having a prior strike conviction under the "Three Strikes" law.  (§§ 667, subds. (b)-(i), 1170.12.)  After the trial court denied Woods' request to strike his prior strike conviction pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), it sentenced him to 32 months in prison.

Woods contends the trial court abused its discretion in denying his *Romero* request because his background, character and future prospects showed he fell outside the spirit of the Three Strikes law.  He also contends he must be allowed to withdraw his no contest plea because it was predicated on the trial court's indication that it was willing to strike his prior strike conviction.

We reject Woods' contentions and affirm the judgment.

---

[1] Undesignated statutory references are to the Penal Code.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 21, 2021, Woods was involved in an incident with his girlfriend (girlfriend) at a motel in San Jose. During the course of an argument, Woods shoved girlfriend onto a bed, grabbed her dog with a knife in his hand, and threatened to kill the dog. Girlfriend called 911; when officers arrived, Woods initially denied the altercation and then told the officers he wanted them to shoot him. Woods was arrested and held pursuant to Welfare and Institutions Code section 5150.

At the time of the incident, Woods was subject to a protective order that prohibited him from harassing, threatening or striking girlfriend.

Woods was subsequently charged with one felony count of violating a protective order in violation of section 166, subdivision (c)(4) while having a prior conviction under that statute within the previous seven years, and one misdemeanor count of battery on a person with whom he had a dating relationship in violation of section 243, subdivision (e)(1). The People also alleged that Woods had a prior strike conviction from 2014, stemming from an argument with a female victim during which he spit in her face and struck her with his fist.[2]

Pursuant to the terms of a negotiated plea agreement, Woods pleaded no contest to the section 166, subdivision (c)(4) charge and admitted the prior strike allegation. The parties agreed to a maximum possible 32-month sentence and that Woods could bring a *Romero* request seeking to strike his prior strike conviction.

In his *Romero* request, Woods argued the court should strike the prior strike because he had made improvements in his life by addressing mental illness and substance

---

[2] The district attorney verbally amended the complaint at the July 7, 2021 proceedings to add the prior strike allegation from Santa Clara County Superior Court docket C1493177, pursuant to section 1170.12, subdivision (b)(1).

abuse problems and because he now had a stronger support system in place, including from the victim in this case.

The trial court denied the motion. It determined that Woods fell squarely within the ambit of the Three Strikes law, "almost primarily because he has been convicted so many times after the strike offense."

The court acknowledged Woods' background and upbringing, including that he had grown up in foster care and group homes, been sexually abused as a child, and had mental health and substance abuse challenges. The court also noted as factors in Woods' favor that he had obtained his GED, said he planned to find a job and participate in treatment and counseling, had a greater support system than before, and was addressing his mental health issues.

However, the court also noted the nature and circumstances of the present felony, which showed threats of violence, suicide ideation and general hostility towards the victim. The court documented Woods' 14 other convictions for similar offenses since the prior strike, including multiple incidents with the same victim, as well as a domestic violence incident with a different victim who was pregnant, where Woods struck her head, attempted to strangle her, and kicked her in the stomach three times. The court noted that the probation report described Woods' future prospects as "marginal at best" and documented his failure to attend and complete numerous court-ordered programs.

As the court explained, Woods had continually violated the law with crimes of violence, despite numerous opportunities to correct his behavior. His conduct since being convicted of the strike in 2014 showed violent conduct toward women with whom he was involved in a relationship, and that he presented a danger to society.

The court sentenced Woods to 32 months in prison.

Woods timely appealed.

## II. DISCUSSION

Woods contends that (1) the trial court abused its discretion in denying his *Romero* request because the record shows he "was not incorrigible but for the first time had realistic prospects for reform," and (2) if this court does not reverse the denial of his *Romero* request, Woods must be given an opportunity to withdraw his no contest plea.

### A. The trial court did not abuse its discretion in denying Woods' Romero request

#### 1. Legal principles and standard of review

Section 1385 authorizes a trial court to strike prior strike convictions "in furtherance of justice." (*Romero*, *supra*, 13 Cal.4th at pp. 504, 530.) That discretion, however, is "limited." (*Id*. at p. 530.) "[T]he Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders." (*Id*. at p. 528.) "To achieve this end, 'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he [or she] actually fell outside the Three Strikes scheme." ' " (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).)

In exercising its discretion, the trial court must " ' "consider[] both . . . the constitutional rights of the defendant, and the interests of society represented by the People." ' " (*Romero*, *supra*, 13 Cal.4th at p. 530, italics omitted.) The court must accord "preponderant weight . . . to factors intrinsic to the [Three Strikes] scheme, such as the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his [or her] background, character, and prospects." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).)

"[N]o weight whatsoever may be given to factors extrinsic to the scheme, such as the mere desire to ease court congestion or, a fortiori, bare antipathy to the consequences for any given defendant." (*Ibid*.) Ultimately, the trial court must determine whether "the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he [or she] had not previously been convicted of one or more serious and/or violent felonies." (*Ibid*.)

We review a trial court's discretionary sentencing choices, including its decision not to strike a prior strike conviction, for abuse of discretion. (*Carmony*, *supra*, 33 Cal.4th at p. 375.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id*. at pp. 376-377.)

"[A] trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]." (*Carmony*, *supra*, 33 Cal.4th at p. 378.) An abuse of discretion also occurs where the trial court "strikes a sentencing allegation[] solely 'to accommodate judicial convenience or because of court congestion,' " or "simply because a defendant pleads guilty." (*Romero*, *supra*, 13 Cal.4th at p. 531.)

On the other hand, "[w]here the record is silent [citation], or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]. Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he [or she] squarely falls once he [or she] commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary. Of course, in such an extraordinary case—where the relevant factors . . . manifestly support the striking of a prior conviction and no reasonable minds could differ—the failure to strike would constitute an abuse of discretion." (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

### 2. Analysis

Applying these standards here, we determine the trial court properly exercised its discretion in denying Woods' *Romero* request. The court accorded preponderant weight to the nature and circumstances of Woods' current felony as well as his prior violent felony convictions. (*Williams*, *supra*, 17 Cal.4th at p. 161.) It noted that the current offense against girlfriend showed threats of violence, suicide ideation and general hostility towards the victim, and that Woods' numerous convictions since the prior strike included additional domestic violence incidents with both girlfriend and another victim.

The court also considered the particulars of Woods' background, character and prospects, acknowledging that he had grown up in foster care and group homes, been sexually abused as a child, and had mental health and substance abuse challenges. (*Williams*, *supra*, 17 Cal.4th at p. 161.) In addition, the court recognized that Woods had obtained his GED, planned to find employment and seek treatment and counseling, has a greater support system in place than before, and was addressing his mental health issues.

6

The court considered Woods' future prospects, which it determined to be "marginal at best," noting in particular his failure to attend and complete numerous court-ordered programs as well as his continual violation of the law with crimes of violence despite numerous opportunities to correct his behavior.

Ultimately, the trial court determined, based on all these factors, that Woods fell within the ambit of the Three Strikes law and should not be treated as though he had not previously been convicted of the prior strike conviction. (*Williams*, *supra*, 17 Cal.4th at p. 161.) As the court explained, Woods' conduct since that conviction showed violent conduct toward women and demonstrated that he presents a danger to society.

In making these determinations, the trial court properly considered both the constitutional rights of Woods and the interests of society and gave no weight to any improper extrinsic factors such as a desire to ease court congestion. (*Romero*, *supra*, 13 Cal.4th at p. 530; *Williams*, *supra*, 17 Cal.4th at p. 161.)

Woods has not demonstrated that the trial court's decision was irrational or arbitrary. (*Carmony*, *supra*, 33 Cal.4th at pp. 375-378.) Instead, Woods largely addresses the same factors the trial court considered, but simply contends that they compelled a contrary result. For instance, he emphasizes his difficult upbringing and argues that he now has a better support system and is properly addressing his substance abuse and mental health issues. He disagrees that his future prospects are marginal, noting that he intends to find employment and has expressed a willingness to participate in domestic violence classes and psychotherapy. He also minimizes the current offense against girlfriend, claiming there was no "injury to the victim" and that it was not serious or violent, and similarly downplays the previous incidents the trial court addressed.

However, the trial court considered these factors and, in exercising its discretion, reached a different determination. This is not a case where the trial court "mistakenly believed that it could not consider [certain] mitigating factor[s] at sentencing." (See *People v. Avila* (2020) 57 Cal.App.5th 1134, 1142.) Instead, the trial court examined

7

defendant's "background, character, and prospects" (*Williams*, *supra*, 17 Cal.4th at p. 161) and "is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

We may not substitute our judgment for that of the trial court. (*Carmony*, *supra*, 33 Cal.4th at pp. 379-380.) As in *Carmony*, "the trial court in this case refused to strike defendant's prior convictions based on factors allowed under the law and fully supported by the record." (*Id*. at p. 379.) Woods has not demonstrated that the "the circumstances [were] 'extraordinary,' " such that "no reasonable people could disagree that [he] falls outside the spirit of the three strikes scheme." (*Id*. at p. 378.) The trial court did not abuse its discretion in denying Woods' *Romero* request.

### B. There is no basis for allowing Woods to withdraw his plea.

Woods argues he was motivated to plead no contest by the trial court's "indicated willingness" to strike the prior strike conviction. But Woods cites no facts in support of that assertion and the record contradicts it. Rather than any "indicated willingness" to strike the prior strike conviction, the trial court actually stated that it was "not making any promise, except that I'm going [to] listen very carefully to your lawyer at the time of sentencing and to the D.A., and at that time I will consider striking the strike."

Moreover, Woods entered his plea pursuant to a negotiated disposition with the district attorney, as opposed to an "open plea" to the court. (See, e.g., *People v. Cuevas* (2008) 44 Cal.4th 374, 381, fn. 4.) That is, Woods entered his no contest plea as part of an agreement with the district attorney in exchange for a maximum possible sentence of 32 months if the court did not strike the prior strike conviction—facts which Woods indicated to the court he understood.

The authority Woods relies on is therefore inapposite—in both *Williams* and *People v. Mayfield*, the trial courts clearly indicated a willingness to strike the prior strike convictions, in response to which the defendants entered open pleas. (*Williams*, *supra*,

8

17 Cal.4th at p. 164; *People v. Mayfield* (2020) 50 Cal.App.5th 1096 (*Mayfield*).)  In *Williams*, the trial court stated, " 'this might be an appropriate case to strike a prior, and then treat it as a two-strike case' 'because of the age of those prior serious felonies, burglaries, and one robbery,' which Williams committed about 13 years earlier when he was about 20 years of age, and 'because of . . . the lack of any kind of violence related crimes from then until now . . . ,' " in response to which the defendant immediately withdrew his original plea of not guilty and his denial of the prior strike allegations. (*Williams*, *supra*, 17 Cal.4th at p. 156, fn. omitted.)  The People even acknowledged that the superior court's statement had been " 'a powerful inducement' " for the defendant to change his plea and they conceded that, " 'in fairness,' " he should be allowed to withdraw it.  (*Id*. at p. 164, fn. 7.)

Similarly, in *Mayfield*, the trial court judge "indicated he would be willing to strike one of respondent's prior strike convictions and sentence him as a second strike offender to five years in prison if he pleaded guilty to the charges."  (*Mayfield*, *supra*, 50 Cal.App.5th at p. 1100.)

Nothing resembling those facts occurred here.  Unlike in *Williams*, the trial court did not " 'manifestly influence[]' " Woods' decision to enter his plea.  (*Williams*, *supra*, 17 Cal.4th at p. 164.)  There is no basis for allowing Woods to withdraw his plea here.

### III.    DISPOSITION

The judgment is affirmed.

_____
                  Wilson, J.

WE CONCUR:


_____
            Bamattre-Manoukian, Acting P.J.



_____
            Danner, J.


People v. Woods
H049410